O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAQUIN GONZALEZ RODRIGUEZ,<br><br>Plaintiff,<br><br>vs.<br><br>CARDINAL ROGER MAHONY, in his official and individual capacity, THE ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES, a corporation sole, CARDINAL NORBERTO RIVERA, in his official and individual capacity, DIOCESE OF TEHUACAN, NICOLAS AGUILAR RIVERA<br><br>Defendants. | CASE NO. CV 10-02902-JST (JEMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 57)** |

Before the Court is a Motion for Judgment on the Pleadings filed by Defendants Cardinal Roger Mahony ("Cardinal Mahony" or "Mahony") and The Roman Catholic Archbishop of Los Angeles (the Archdiocese of Los Angeles") (collectively, the "California Defendants"). (Mot., Doc. 57; Mem. of P&A in Supp. of Mot. ("Mem."), Doc. 58.) Having considered the papers submitted by the parties, heard oral argument, and taken the matter under submission, the Court GRANTS in part and DENIES in part the California Defendants' Motion.

## I. FACTUAL BACKGROUND

On a motion to dismiss under Rule 12(c), the Court must accept all factual allegations as true. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (citation omitted). Plaintiff Joaquin Gonzalez Rodriguez ("Plaintiff") alleges the following facts in his Second Amended Complaint ("SAC").

Since July 27, 1970, Father Nicholas Aguilar ("Fr. Aguilar") has been an ordained Catholic Priest. (SAC ¶ 15, Doc. 48.) From then until 1987, Fr. Aguilar was a priest for the Diocese of Tehuacan, Mexico, and a parish priest of San Sebastian Parish in Cuacnopalan, Mexico. (*Id.* ¶¶ 15-20.) During that time, Defendant Cardinal Norberto Rivera ("Cardinal Rivera" or "Rivera"), then Bishop of Tehuacan, had reason to believe that Fr. Aguilar had sexually abused young boys. (*Id.* ¶ 18.)

On January 27, 1987, Cardinal Rivera wrote to Cardinal Mahony, then Archbishop of Los Angeles, and recommended that Fr. Aguilar work as a priest in Los Angeles. (*Id.* ¶ 19.) In his letter, Rivera informed Mahony and the Archdiocese that Fr. Aguilar was seeking to relocate to California for "family and health reasons." (*Id.*) Around February or early March 1987, Rivera transferred Fr. Aguilar to the Archdiocese of Los Angeles under the supervision of Mahony. (*Id.* ¶ 20.)

On March 16, 1987, Mahony assigned Fr. Aguilar to be the associate pastor at Our Lady of Guadalupe Church in Los Angeles. (*Id.* ¶ 21.) On March 23, 1987, Rivera sent Mahony a confidential letter that, according to Rivera, "provided a summary of Aguilar's

homosexual problems," including the sexual abuse of minors while serving as a priest in Mexico. (*Id.* ¶ 23.) On May 18, 1987, Mahony assigned Fr. Aguilar to serve as the associate pastor at St. Agatha in Los Angeles. (*Id.* ¶ 24.)

In December 1987, two altar boys from Our Lady of Guadalupe informed their mother that Fr. Aguilar molested them. (*Id.* ¶ 25.) The mother then reported this abuse to Fr. Bill McClean, pastor of Our Lady of Guadalupe. (*Id.* ¶ 26.) Sister Renee, the Principal of Our Lady of Guadalupe, was also informed that Fr. Aguilar was molesting children. (*Id.* ¶ 29.) On January 8, 1988, the Archdiocese of Los Angeles was notified that Fr. Aguilar was molesting children in Los Angeles. (*Id.* ¶ 32.)

On January 8, 1988, Fr. McClean informed Monsignor Thomas Curry ("Monsignor Curry" or "Curry"), the Vicar for Clergy for the Archdiocese of Los Angeles, of Fr. Aguilar's alleged sexual abuse. (*Id.* ¶ 33.) The next day, Monsignor Curry confronted Fr. Aguilar about the allegations, at which time Fr. Aguilar informed Curry that he would be returning to Mexico. (*Id.* ¶ 36.) Monsignor Curry did not notify law enforcement of Fr. Aguilar's intent to leave the country or of his alleged sexual abuse. (*Id.*) On the evening of January 9, 1988, a relative of Fr. Aguilar took him to Tijuana. (*Id.* ¶ 37.)

On January 11, 1988, Sister Renee reported to the police that Fr. Aguilar had molested children at Our Lady of Guadalupe. (*Id.* ¶ 39.) This was the first report made to any law enforcement agency by any individual affiliated with the Los Angeles Archdiocese regarding Fr. Aguilar's alleged sexual abuse of children. (*Id.*)

That same day, Monsignor Curry wrote a letter to Rivera at the Diocese of Tehuacan stating that "[i]t is with great sorrow that I write to you, but it has come to our attention that several families in Our Lady of Guadalupe Parish, Los Angeles, where [Fr. Aguilar] served for some months on his first coming here, accuse him of acting very inappropriately with their children." (*Id.* ¶ 40.) On February 23, 1988, Monsignor Curry wrote another letter to Rivera that enclosed an article from the Los Angeles Times dated February 20, 1988, titled "Priest Sought in Alleged Molestation of Altar Boys," which

purportedly described allegations of Fr. Aguilar's sexual molestation of children in several Los Angeles parishes. (*Id.* ¶ 42.)

In March 1988, Mahony and Rivera exchanged a number of letters regarding Fr. Aguilar. On March 4, 1988, Mahony wrote to Rivera about Fr. Aguilar, stating that "[i]t is almost impossible to determine precisely the number of young altar boys he has sexually molested, but the number is large . . . . This priest must be arrested and returned to Los Angeles to suffer the consequences of his immoral actions." (*Id.* ¶ 43.) On March 17, 1988, Rivera wrote back to Mahony: "You will understand that I'm not in a position to find him, much less force him to return to appear in court . . . . In the letter of presentation of January 27, 1987, I included an identification photograph, and in the confidential letter of March 23 of the same year, I provided a summary of the priest's homosexual problems." (*Id.* ¶ 45.) On March 30, 1988, Mahony responded by letter, saying: "I would like to tell you that I have not received any letter from you dated March 23, 1987, nor any other information concerning the homosexual problems of the priest . . . . We have here in the Archdiocese of Los Angeles a clear plan of action: we do not admit priests with any homosexual problems." (*Id.* ¶ 46.)

A Los Angeles Police Department ("LAPD") investigation found that Fr. Aguilar sexually abused at least 26 minors in the nine-month period that he served as a priest in Los Angeles. (*Id.* ¶ 41.) On April 7, 1988, the LAPD charged Fr. Aguilar with 19 felony counts of lewd acts upon a child. (*Id.* ¶ 47.)

In October 1994, Fr. Aguilar raped a thirteen-year old altar boy during a mass at a parish in Mexico City, and threatened the boy to keep quiet. (*Id.* ¶ 48.) The boy's parents informed a priest at the parish, who told them to report the incident to the police, which they did. (*Id.* ¶¶ 49, 51.)

In 1997, Fr. Aguilar was placed back at the Diocese of Tehuacan, where he worked at various churches, including San Vicente de Ferrer. (*Id.* ¶ 56.) That year, Fr. Aguilar raped and sexually abused Plaintiff, who was twelve years old at the time. (*Id.* ¶ 57.) In 2003, a Mexican court found Fr. Aguilar guilty of one count of sexual abuse that occurred

in 1997, unrelated to Plaintiff, and sentenced him to one year in prison. (*Id*. ¶ 62.) On appeal, the Mexican court affirmed Fr. Aguilar's conviction, but relieved him from serving his sentence because of the age of the crime. (*Id*. ¶ 64.)

**II. PROCEDURAL BACKGROUND**

On April 20, 2010, Plaintiff filed this suit alleging claims under the Alien Tort Statute, 28 U.S.C. § 1350 (the "ATS"), and California law against Fr. Aguilar, Cardinal Rivera, the Diocese of Tehuacan, and the California Defendants arising out of the above-enumerated facts. (Compl., Doc. 1.) Plaintiff filed a First Amended Complaint on June 3, 2010, which the California Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Defs.' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("MTD"), Doc. 24.) Among other bases for dismissal, the California Defendants argued that Plaintiff's ATS claims were barred by the ATS' ten-year statute of limitations. (MTD at 9.)

On February 25, 2011, the Court denied the California Defendants' MTD. (Order Denying Defs.' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("MTD Order"), Doc. 38.) The Court ruled that Plaintiff's claims under the ATS are not frivolous, and therefore present a federal question over which this Court has original jurisdiction. (*Id*. at 12.) It further ruled that, because the Court has subject matter jurisdiction over Fr. Aguilar under the ATS, the Court has supplemental jurisdiction over the remaining Defendants. (*Id*. at 14-15, citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).)

As to the California Defendants' statute of limitations argument, the Court held that "the ATS is subject to equitable tolling for incapacitation," and therefore the ten year statute of limitations did not begin to run until Plaintiff turned eighteen in 2003. (*Id*. at 11, citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 773 (9th Cir. 1996).) The Court also noted that "under California law, children who are victims of sexual abuse have until their twenty-sixth birthday to file a cause of action." (*Id*.) Accordingly, "[u]nder either the

application of equitable tolling to ATS or California's statute of limitations for childhood sexual abuse, Plaintiff's claim is timely and not barred by the statute of limitations." (*Id*.)

On October 28, 2011, Plaintiff filed the SAC pursuant to a stipulation by the parties in order to substitute his true name and add certain other information required to serve the summons and complaint in this action on Fr. Aguilar, Rivera, and the Diocese of Tehuacan, in Mexico. The SAC asserts ten claims, including: (1) Plaintiff's First through Fifth Claims under the ATS against all Defendants (collectively, the "ATS Claims"); (2) Plaintiff's Sixth Claim for intentional infliction of emotional distress against all Defendants;[1] (3) Plaintiff's Seventh and Eighth Claims for negligence against Cardinal Rivera and the Diocese of Tehuacan; and (4) Plaintiff's Ninth and Tenth Claims for negligence against Cardinal Mahony and the Archdiocese of Los Angeles (the "Common Law Claims").[2] The California Defendants answered the SAC on November 4, 2011. (Answer, Doc. 50.) Thereafter, on January 4, 2012, the California Defendants filed their Motion for Judgment on the Pleadings seeking dismissal of Plaintiff's ATS Claims and Common Law Claims as time barred.

## III. LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); therefore, the same legal standard applies to both motions. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a

---

[1] In his Opposition to the California Defendants' Motion for Summary Judgment, Plaintiff asserts that he no longer intends to prosecute his claim for intentional infliction of emotional distress. (Opp'n to Defs.' Mot. for Summary Judgment at 10, Doc. 64.)

[2] The SAC is unclear as to whether the Ninth and Tenth Claims also seek to assert claims under the ATS. To the extent the Ninth and Tenth Claims seek to assert a claim under the ATS, they should be treated as ATS Claims, rather than Common Law Claims.

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a Rule 12(b)(6) motion, the Court must accept as true all allegations of material facts that are in the complaint, and must construe all inferences in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). Judgment on the pleadings is therefore appropriate only "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997) (citation omitted).

## IV. DISCUSSION

### A. ATS Claims

In its MTD Order, the Court ruled that Plaintiff's ATS Claims are timely. (MTD Order at 11.) The California Defendants now seek to revisit the Court's holding, again arguing that Plaintiff's ATS Claims are barred by the ten-year statute of limitations applied to actions brought under the ATS. (Mem. at 4-10.) The Court rejects their attempt to do so under the law of the case doctrine.

"Under the [law of the case] doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). The doctrine applies when the issue in the case "[has] been 'decided explicitly or by necessary implication in the previous disposition.'" *Id.* (citation omitted). In its MTD Order, the Court specifically considered, and explicitly decided, that "[u]nder . . . the application of equitable tolling to ATS . . . Plaintiff's claim is timely and not barred by the statute of limitations." (MTD Order at 11.) That determination is law of the case.

The fact that the California Defendants now feel that their MTD gave short shrift to their analysis regarding the ATS statute of limitations (*see* Mem. at 3), does not change the Court's analysis. While the Court has discretion to "depart from the law of the case where:

(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result," *Lummi*, 235 F.3d at 452-53, the California Defendants have not persuaded the Court that any of those conditions exist with respect to the Court's MTD Order. "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citing *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993)).

Moreover, even if the Court were to revisit its statute of limitations ruling as to Plaintiff's ATS Claims, it would affirm its MTD Order. The ATS borrows its statute of limitations from the Torture Victim Protection Act (the "TVPA"). *Papa v. United States*, 281 F.3d 1004, 1012 (9th Cir. 2002). The Senate Report on the TVPA states that the ten-year statute of limitations is subject to equitable tolling, including incapacitation for minority status. S.Rep. No. 101-249 at 10-11, n.28 (1991).

Accordingly, the California Defendants' Motion is denied as to Plaintiff's ATS Claims.

**B. <u>Common Law Claims</u>**

While the Court's MTD Order addressed Plaintiff's ATS Claims, it did not address whether Plaintiff's supplemental Common Law Claims are barred by the applicable statute of limitations. Therefore, the Court will consider the timeliness of Plaintiff's Common Law Claims for the first time in this Order.

The California Defendants seek dismissal of Plaintiff's Common Law Claims on the basis that they are time-barred under the one-year or three-year statute of limitations applicable in Puebla, Mexico, which the California Defendants contend the Court is bound to apply under California's choice-of-law rules. Plaintiff, on the other hand, contends that his Common Law Claims are timely under California Code of Civil Procedure § 340.1, which permits "an action for recovery of damages suffered as a result of childhood sexual

abuse" to be brought "within eight years of the date the plaintiff attains the age of majority." Cal. Code. Civ. Proc. § 340.1(a).

"In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state—in this case, California." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). California's choice-of-law analysis is a two-part inquiry. First, the Court determines whether it is required to apply the law of the foreign jurisdiction under California's borrowing statute, California Code of Civil Procedure § 361. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 86-87 (2010). Second, if section 361 does not mandate the application of foreign law, the Court considers whether to apply California law or foreign law under the governmental interest test. *Id.*

California's borrowing statute provides that:

> When a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in this State, except in favor of one who has been a citizen of this State, and who has held the cause of action from the time it accrued.

Cal. Code Civ. Proc. § 361. Therefore, "[b]y its terms section 361 applies *whenever* a cause of action arises in another state and would be stale in that state, unless the holder of the cause of action is a California citizen who has held the cause from the time of accrual." *Giest v. Sequoia Ventures, Inc.*, 83 Cal. App. 4th 300, 303 (2000).

Here, the California Defendants contend Plaintiff's Common Law Claims arose in Puebla, Mexico when he was abused by Fr. Aguilar. The California Defendants reason that Plaintiff's claims arose at the time of abuse because a tort claim accrues in the location where the injury occurs. (Mem. at 12-14.) Plaintiff contends that his Common Law Claims arose in California because the wrongful actions of the California Defendants occurred at the time they aided and abetted Fr. Aguilar's flight to Mexico and facilitated

his evasion of law enforcement. (Opp'n. at 12, Doc. 62.) Plaintiff reasons that because these tortious acts occurred entirely in California, his common law tort claims against the California Defendants arose in California for the purposes of the borrowing statute.

Though the question of where a cause of action arises may seem straightforward, the answer is unsettled under California law as it pertains to section 361. The California Supreme Court recently recognized that fact in *McCann*, when it considered whether a plaintiff's personal injury cause of action for asbestos-related mesothelioma arose in Oklahoma where he was exposed to asbestos or in California where he was diagnosed with mesothelioma. The Court observed:

> Although application of section 361 generally is straightforward in a case involving, for example, a typical automobile accident—in which the allegedly tortious conduct, the resulting injury, and compensable damage all occur at the same time and in the same place—proper application of the statute is more problematic in a case, like the present one, in which the defendant's allegedly injury-producing conduct occurred in another state at a much earlier date but the plaintiff's resulting illness or injury does not become apparent and reasonably is not discovered until many decades later, at a time when the plaintiff has established residence in California. In the factual setting here at issue, it may be reasonably debatable whether plaintiff's cause of action against [defendant] 'arose' in Oklahoma or instead in California for purposes of section 361 . . . .

*McCann*, 48 Cal. 4th at 85-86. The Court further reasoned:

> In the present circumstances, there may be some question whether, for purposes of section 361, plaintiff's cause of action should be considered to have 'arisen' in Oklahoma, where plaintiff was exposed to asbestos for which [defendant] assertedly is responsible, or, instead, in California, where plaintiff resided when his illness first was diagnosed and gave rise to

> compensable damage that constitutes a necessary element of his cause of action.

*Id*. at 86 n.5.

Ultimately, the California Supreme Court declined to resolve the issues it identified regarding where a cause of action arises for the purposes of section 361. Instead, it assumed that the cause of action arose in California, or that the plaintiff was a citizen of California at the time the cause of action accrued, and applied the governmental interest test to conclude that Oklahoma law applied to plaintiff's claims. *Id*. at 87, 97-98.

Because the California Supreme Court did not decide where the *McCann* plaintiff's cause of action arose for the purposes of section 361, its decision in *McCann* is not dispositive of the question now presented to this Court: whether Plaintiff's Common Law Claims arose in Puebla or in California. The Supreme Court's analysis in *McCann* does, however, assist this Court's analysis insofar as it makes clear that where a tort arises for purposes of section 361 is not necessarily coextensive with where the final necessary element for a tort cause of action—i.e., compensable damage—is completed. If a tort cause of action necessarily arises where a plaintiff's claim becomes ripe for adjudication, the *McCann* Court would have easily concluded that the plaintiff's claims arose in California. It did not. Therefore, the multitude of cases cited by the California Defendants for the proposition that the tort of negligence accrues upon the occurrence of an injury are not dispositive of whether Plaintiff's claims arose in Puebla. Here, as in *McCann*, the Court is confronted with a situation in which the alleged wrongful conduct underlying Plaintiff's Common Law Claims against the California Defendants occurred in California, while the injury and damage from the California Defendants' purported actions occurred several years later in Puebla. And, as in *McCann*, this Court need not resolve the issue because, even assuming that Plaintiff's claims arose in California, the Court would apply the statute of limitations from Puebla law under the governmental interest test.

If "section 361 does not mandate application of another jurisdiction's statute of limitations . . . the question whether the relevant California statute of limitations . . . or

instead, another jurisdiction's statute of limitations . . . should be applied in a particular case must be determined through application of the governmental interest analysis that governs choice-of-law issues generally." *McCann*, 48 Cal. 4th at 87. The government interest test is a three-part inquiry:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Id*. at 87-88 (citation and internal quotation marks omitted).

As to the first prong of the governmental interest analysis, Plaintiff preliminarily disputes that Puebla law recognizes *any* cause of action against the California Defendants to which its statute of limitations could apply. The Court disagrees. While Puebla, as a civil law jurisdiction, does not recognize common law torts identical to those under our common law system, the California Defendants have demonstrated, and the Court's research confirms, that a cause of action for harm caused to Plaintiff by the California Defendants is cognizable under Puebla law.

Pursuant to Federal Rule of Civil Procedure 44.1, a court determining foreign law "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. That rule permits a court to "consider a wide array of materials in order to ascertain foreign law," including "expert testimony accompanied by extracts from foreign legal

materials" and the court's own research. *Universe Sales Co. v. Silver Castle, LTD.*, 182 F.3d 1036, 1038 (9th Cir. 1999) (applying Rule 44.1 in case exercising diversity jurisdiction). The court's determination is treated as a ruling on a matter of law. Fed. R. Civ. P. 44.1.

Under Mexican law, "specific common law torts are not recognized. Instead, the noncontractual civil wrongs that we characterize as the torts of . . . negligence and gross negligence are encompassed in one general Article in the Mexican Civil Code" that defines liabilities from "illicit acts":

> Whoever, by acting illicitly or against the good customs and habits, causes damage to another shall be obligated to compensate him unless he can prove that the damage was caused as a result of the fault or inexcusable negligence of the victim.

*Curley v. AMR Corp.*, 153 F.3d 5, 14 (2d Cir. 1998) (quoting Mexican Civil Code, art. 1910). Accordingly, several courts have recognized that a cause of action for negligence can be prosecuted under analogous provisions of Mexican law. *See, e.g., id.* at 14-15 (holding district court should have applied law of Mexico to negligence claims under New York choice-of-law rules); *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 379-83 (5th Cir. 2002) (holding Mexico adequate forum for negligence claim); *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999) (discussing contributory negligence as defense to negligence liability under Mexican law); *Ruelas Aldaba v. Michelin N. Am., Inc.*. No. C 04–5369 MHP, 2005 WL 3560587, at *1-4 (N.D. Cal. Dec. 29, 2005) (holding Mexico adequate forum for suit alleging claim for negligence); *Buettgen v. Volkswagenwerk, A.G.*, 505 F. Supp. 84, 86 (D.C. Mich. 1980), *aff'd* 701 F.2d 174 (6th Cir. 1982) ("Plaintiffs' negligence count is analogous to the Mexican cause of action for 'illicit acts' under Article 1843 of Civil Code of Vera Cruz.").

The California Defendants submitted the expert declaration of David Lopez, which included excerpts from the Civil Code of Puebla establishing that Puebla recognizes liability for "illicit acts." (Lopez Decl. ¶ 4.1, Ex. 3 at 29, Doc. 59.) Specifically, the

Puebla Civil Code, as it existed in 1997, recognized a civil claim for "subjective liability," which encompassed "liability for injury caused to another as a result of one's illicit acts": "[t]he one who performs an illicit act that causes damages or losses to another person is obligated to repair the damages and losses." (*Id.*) Accordingly, the California Defendants have demonstrated that the Puebla Civil Code, like the Mexican Civil Code, recognizes a cause of action that would encompass the civil wrongs committed against Plaintiff that form the basis for his Common Law Claims. *See* Jorge A. Vargas, *Mexican Law and Personal Injury Cases: An Increasingly Prominent Area for U.S. Legal Practitioners and Judges*, 8 San Diego Int'l L.J. 475, 506 (2007) (local civil codes for each Mexican state substantively parallel the Federal Civil Code); *see also*, *Buettgen*, 505 F. Supp. at 86 (looking to Mexican law to define "illicit acts" under Vera Cruz Civil Code). Because there is no dispute that the statute of limitations for a cause of action for illicit acts under Puebla law differs from that applicable to Plaintiff's Common Law Claims under California law, the Court turns to the second and third prongs of the governmental interest test.

The second prong of the governmental interest analysis requires the Court to examine "each jurisdiction's interest in the application of its own law to the circumstances of [this case] to determine whether a true conflict exists." *McCann*, 48 Cal. 4th at 90 (internal citation and quotation marks omitted). "In conducting this inquiry, [the court makes its] own determination of the relevant policies and interests, without taking 'evidence' as such on the matter." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1203 (2011) (internal citation and quotation marks omitted). The Court concludes that both California and Puebla have an interest in applying their statute of limitations to Plaintiff's Common Law Claims.

The California Supreme Court has articulated the purpose behind section 340.1 as follows:

> The overall goal of section 340.1 is to allow victims of childhood sexual abuse a longer time period in which to bring suit against their abusers. The

> legislative history makes this abundantly clear. The statute has been amended numerous times since its enactment in 1986, to enlarge the period for filing claims "to hold molesters accountable for their behavior so that they are not 'off the hook' as soon as their victims reach age 21," and to extend the expanded limitations period to actions not just against molesters, but against "any person or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse."

*Doe v. City of Los Angeles*, 42 Cal. 4th 531, 545 (2007) (citation omitted).

By establishing an extended period in which victims of childhood sexual abuse can bring claims not only against their direct abusers, but also against those third parties who negligently enable the abuser's actions, California expressed an interest in deterring individuals from supporting or facilitating childhood sexual abuse and holding those parties accountable for their actions—i.e., not letting them "off the hook." This interest is confirmed by amendments to section 340.1 that extended the statute of limitations for childhood sexual abuse claims beyond a plaintiff's twenty-sixth birthday for claims:

> against a nonperpetrator defendant who is or was in a specified relationship with the perpetrator . . . and who "knew or had reason to know, or was otherwise on notice," of the perpetrator's "unlawful sexual conduct" and "failed to take" preventative measures to "avoid acts of unlawful sexual conduct in the future" by that perpetrator.

*Id*. at 566 (quoting Cal. Code Civ. Proc. § 340.1(b)(2)). The legislative history of that amendment made clear that the provision was "essential to ensure that victims severely damaged by childhood sexual abuse are able to seek compensation from those responsible" and was meant to avoid "unfairly depriv[ing] a victim from seeking redress and ***unfairly and unjustifiably protect[ing] responsible third parties*** from being held accountable for their actions that caused injury to victims." *Id*. at 567 (emphasis added). Because section 340.1 was aimed not just at protecting the victim, but also at preventing the unfair

protection of those responsible for facilitating childhood sexual abuse, California has an interest in applying its statute of limitations to the California Defendants.

Puebla also has an interest in applying its statute of limitations to Plaintiff's Common Law Claims. The statute of limitations for a subjective liability claim under Puebla law would be either one year or three years, and would not be tolled under the circumstances of this case because Plaintiff was a minor with a representative who could have sued on his behalf at the time of the incident. (Lopez Decl. ¶¶ 5.1-5.3.)

Article 14 of the Puebla Civil Code provides that:

> The laws of the State of Puebla shall be applied to all persons within its territory, as well as to acts and events which take place within its jurisdiction or territory, including those persons who validly submit themselves to said laws, unless the law provides for the application of the law of another state, or foreign law, or is otherwise provided by treaties to which Mexico is a party.

(*Id.*, Ex. 3 at 27.) Therefore, Puebla has asserted an interest in applying its laws to its citizens and to events taking place in its jurisdiction. And, by establishing a statute of limitations, it has expressed its interest in the timely adjudication of those claims. Moreover, the prosecution of Plaintiff's Common Law Claims would impose serious burdens on the Puebla judicial system, which would be required to coordinate discovery in the form of depositions and document production. Accordingly, Puebla also has an interest in applying its statute of limitations to Plaintiff's Common Law Claims, which are brought by a Puebla citizen for injuries resulting from sexual abuse perpetrated in Puebla by another Puebla citizen.

Having determined that both California and Puebla have an interest in applying their statute of limitations to Plaintiff's Common Law Claims, the Court turns to the third prong of the governmental interest test—the comparative impairment analysis. *McCann*, 48 Cal. 4th at 96. "Under the comparative impairment analysis, [the court] must carefully evaluate and compare the nature and strength of the interest of each jurisdiction in the

application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state." *Id.* at 96-97 (internal citation and quotation marks omitted). The court "does not weigh the conflicting governmental interests in the sense of determining which conflicting law manifested the better or the worthier social policy on the specific issue." *Id.* at 97 (internal citation and quotation marks omitted). "Instead, the process can accurately be described as a problem of allocating domains of law-making power in multi-state contexts[] by determining limitations on the reach of state policies . . . ." *Id.* "Emphasis is placed on the appropriate scope of conflicting state policies rather than on the quality of those policies." *Id.*

With that goal in mind, the Court concludes that Puebla "should be allocated the predominating lawmaking power under the circumstances of the present case." *Id.* The gravamen of Plaintiff's case, including his Common Law Claims, is the sexual abuse he suffered at the hands of Fr. Aguilar in Puebla. Plaintiff is, and at all times has been, a resident of Puebla. And Fr. Aguilar was a resident of Puebla at the time he molested Plaintiff. Plaintiff reported his abuse to the Puebla law enforcement authorities, who investigated his claims and conducted a criminal prosecution of Fr. Aguilar. (SAC ¶¶ 59-60.) While the California Defendants' conduct occurred entirely in California, Plaintiff's injury occurred entirely in Puebla. Therefore, the tort for which Plaintiff seeks to hold the California Defendants liable was completed and accrued in Puebla. *See City of Vista v. Robert Thomas Secs., Inc.*, 84 Cal. App. 4th 882, 886-87 (2000) ("When damages are an element of a cause of action, the cause of action does not accrue until the damages have been sustained. . . . [W]hen the wrongful act does not result in immediate damage, the cause of action does not accrue prior to the maturation of perceptible harm."). In light of these facts, Puebla's interests would be most significantly impaired by a failure to apply its statute of limitations to Plaintiff's claims.

Moreover, while "the place of the wrong is no longer treated as a controlling factor where application of the law of another jurisdiction having a connection with the [tort] will serve a legitimate interest or policy of the other jurisdiction[;] . . . the situs of the injury

remains a relevant consideration." *Hernandez v. Burger*, 102 Cal. App. 3d 795, 801-802 (1980). "Indeed, with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Id.* at 802; *see also McCann* 48 Cal. 4th at 97-98 ("[A] jurisdiction ordinarily has the 'predominant interest' in regulating conduct that occurs within its borders."); *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1424 (9th Cir. 1989) ("Whatever the specific interests underlying the Saudi rule may be, it seems certain that Saudi Arabia has some legitimate interest in seeing that Saudi law determines the consequences of actions within its borders causing injury to people who reside there. California . . . will not apply its law to conduct in other jurisdictions resulting in injury in those jurisdictions."). Here, that place is Puebla.

In comparison, California's interest in applying section 340.1 is relatively weak under the specific facts of this case, which involve claims brought by a Plaintiff with no connection to California based on childhood abuse that did not occur in California. Moreover, while, as outlined above, California has an interest in deterring the California Defendants' wrongful conduct, that interest will "only be 'negligibly' advanced if claims by nonresidents of California proceed in this forum." *Vestel v. Shiley Inc.*, SACV 96-1205-GLT(EEX), 1997 WL 910373, at *3 (C.D. Cal. Nov. 17, 1997) (citation omitted) (applying governmental interest test). Suits by California residents adequately serve to deter California defendants from engaging in unlawful practices. *Id.*

For the reasons discussed above, the Court concludes that Puebla law, rather than California law, supplies the statute of limitations in this case. Accordingly, Plaintiff's Common Law Claims are time-barred.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part the California Defendants' Motion for Judgment on the Pleadings.

DATED: March 26, 2012

**JOSEPHINE STATON TUCKER**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE